UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AXIS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 7:15-cv-01131-TJM-TWD |
| | ) | |
| ANTHONY WAYNE STEWART, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————— | ) | |
| ANTHONY WAYNE STEWART, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AXIS INSURANCE COMPANY, | ) | |
| | ) | |
| Counter-defendant. | ) | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES,
COUNTERCLAIM, AND REQUEST FOR JURY TRIAL**

**I. ANSWER**

Defendant, Anthony Wayne Stewart ("Stewart"), by counsel, for his answer to the "Complaint for Declaratory Judgment" ("Complaint") filed by Plaintiff, Axis Insurance Company ("AXIS"), states as follows:

Nature of the Action

1.     In this action, AXIS seeks a declaration that AXIS has no duty to defend or to indemnify Anthony Wayne Stewart ("Stewart" or "Defendant") in connection with an underlying action filed by Kevin A. Ward, Sr. and Pamela Ward, styled *Kevin A. Ward, Sr. and Pamela Ward, Individually and as Administrators of the Estate of Kevin A. Ward, Jr., Deceased v.*

{3542408: }

*Anthony Wayne Stewart*, commenced in the Supreme Court of the State of New York, County of Lewis, Index No.: 280-2015, and now pending before the United States District Court, Northern District of New York under Case No.: 7:15-cv-1023 ("Underlying Action").

ANSWER: Stewart admits that AXIS seeks the relief stated in paragraph 1 but denies that it is entitled to the relief sought. Stewart denies any remaining allegations contained in paragraph 1.

## The Parties

2.      At all times relevant hereto, Plaintiff, AXIS, was and is incorporated in the State of Wisconsin and has its principal place of business in Georgia. As such, AXIS is a citizen of both Wisconsin and Georgia.

ANSWER: Stewart lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 2 and, therefore, denies the same.

3.      At all times relevant hereto, Defendant, Stewart, was and is a resident of the State of Indiana.

ANSWER:   Stewart admits the allegations contained in paragraph 3.

## Jurisdiction and Venue

4.      This declaratory judgment action is brought pursuant to 28 U.S.C. § 2201.

ANSWER: The allegations contained in paragraph 4 state, in whole or in part, legal conclusions to which no response is required. To the extent a response is required, Stewart admits 28 U.S.C. § 2201 provides a mechanism to request declaratory relief.

5.      This Court has original, subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

{3542408: }

- 2 -

ANSWER: The allegations contained in paragraph 5 state, in whole or in part, legal conclusions to which no response is required. To the extent a response is required, Stewart does not object to the jurisdiction of this Court.

6.      There is complete diversity of citizenship between Plaintiff and the Defendant to this action, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

ANSWER: The allegations contained in paragraph 6 state, in whole or in part, legal conclusions to which no response is required. To the extent a response is required, Stewart does not object to the jurisdiction of this Court.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b).

ANSWER: The allegations contained in paragraph 7 state, in whole or in part, legal conclusions to which no response is required. To the extent a response is required, Stewart does not object to venue in this District.

<u>Factual Background</u>

8.      This Complaint for Declaratory Judgment arises out of the alleged wrongful death of Kevin A. Ward, Jr. ("Ward") on August 9, 2014, as the result of a motor vehicle incident ("Incident") that occurred at the Canandaigua Motorsports Park during an Empire Super Sprint race event ("ESS Event"), wherein Stewart struck and killed Ward with a super sprint vehicle.

ANSWER: Stewart admits this Complaint for Declaratory Relief arises out of the Underlying Action (as defined in paragraph 1 of AXIS's Complaint). The Complaint filed in the Underlying Action is a written document that speaks for itself and Stewart denies that paragraph 8 is a complete and/or accurate characterization of the same.

9.      By Complaint dated August 4, 2015, Kevin A. Ward, Sr. and Pamela Ward, individually and as administrators of Ward's estate, filed the Underlying Action against Stewart.

{3542408: }

ANSWER:  Stewart admits that the Wards filed the Underlying Action against him. Stewart denies that the Complaint was filed on August 4, 2015.

10.     The Complaint alleges that during the ESS Event, while driving a super sprint vehicle, Stewart struck and killed Ward with the right rear tire of the super sprint vehicle Stewart was driving.

ANSWER:  Stewart responds that the Complaint is a written document that speaks for itself and denies that paragraph 10 is a complete and/or accurate characterization of the same. To the extent that a further response is required, Stewart denies the allegations contained in paragraph 10.

11.     The Complaint in the Underlying Action alleges four causes of action against Stewart for: (1) wrongful death; (2) terror pain and suffering prior to death; (3) intentional/reckless conduct; and (4) gross negligence.

ANSWER:  Stewart responds that the Complaint is a written document that speaks for itself and denies that paragraph 11 is a complete and/or accurate characterization of the same. To the extent that a further response is required, Stewart denies the allegations contained in paragraph 11.

12.     In his Answer to the Complaint, Stewart admitted the Incident took place during the ESS Event on August 9, 2014, and that he was driving the super sprint vehicle that came into contact with Ward, who was also a driver in the race.

ANSWER:  Stewart responds that the Answer is a written document that speaks for itself and denies that paragraph 12 is a complete and/or accurate characterization of the same. To the extent that a further response is required, Stewart denies the allegations contained in paragraph 12.

{3542408: }

13.     Stewart has also asserted various defenses in the Underlying Action. This Declaratory Judgment action does not seek to address the validity or application of the defenses raised by Stewart in the Underlying Action, as such defenses will be addressed during the course of the Underlying Action.

ANSWER:   Stewart responds that the Answer is a written document that speaks for itself and denies that paragraph 13 is a complete and/or accurate characterization of the same. Stewart is without sufficient information to admit or deny the remaining allegations contained in paragraph 13, and therefore, denies the same.

<u>Axis Primary Policy</u>

14.     AXIS issued primary commercial general liability policy AXGL01105050-14 to Tony Stewart Racing Enterprises, LLC ("Tony Stewart Racing") for the policy period January 1, 2014 to January 1, 2015 ("AXIS Primary Policy"). The AXIS Primary Policy has limits of liability of $1 million each occurrence and $2 million general aggregate per covered event.

ANSWER:   Stewart admits that AXIS issued a primary commercial general liability policy to Tony Stewart Racing ("AXIS Primary Policy").   Stewart further responds that the AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 14 is a complete and/or accurate characterization of the same.

15.     The AXIS Primary Policy contains a Participant Legal Liability – Motorsports endorsement, which provides Participant Legal Liability Coverage under the Commercial General Liability Coverage Part.

ANSWER:   Stewart responds that the AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 15 is a complete and/or accurate characterization of the same.

16.     The AXIS Primary Policy's Participant Legal Liability – Motorsports endorsement contains the following exclusion:

> 2. Exclusion
>
> This insurance does not apply to claims or actions brought by one racing vehicle driver against another racing vehicle driver.
>
> However, in the event of such a claim or action, coverage remains in effect for the First Named Insured and any other applicable insureds; however, coverage is specifically excluded for the racing vehicle driver who is the object of such claim or action.

ANSWER:  Stewart responds that the AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 16 is a complete and/or accurate characterization of the same.

17.     By endorsement, the AXIS Primary Policy also limits coverage under the Commercial General Liability Coverage part at follows:

Schedule of Events

> Specified Event(s)                                            Event Date(s)
> World of Outlaws - 65 Events
> USAC Sprint - 30 Events
> USAC Silver Crown - 10 Events
>
> (If no entry appears above, information required to complete this Endorsement will be shown in the Declarations as applicable to this Endorsement.)
>
> Coverage provided by this policy applies only to the event(s) listed in the above Schedule, and only for the specific date(s) or said event(s). In the event of complete and total postponement of any of the event(s) shown in the Schedule, from the specified event date(s), upon sufficient prior notification by you to us or our representative, such coverages as afforded by this policy, and for which premium has been received by us, shall be provided for said event(s) on a reassigned date, with no additional premium due.
>
> All other terms and conditions remain unchanged.

ANSWER:  Stewart responds that the AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 17 is a complete and/or accurate characterization of the same.

18.    The ESS Event is not listed on the Schedule of Events endorsement within the AXIS Primary Policy.

ANSWER:  Stewart responds that the AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 18 is a complete and/or accurate characterization of the same.

19.    The AXIS Primary Policy also contains other terms, conditions, and exclusions that define the scope of coverage under the AXIS Primary Policy.

ANSWER:  Stewart admits that the AXIS Primary Policy contains numerous terms, conditions, and exclusions that define the scope of coverage.  However, the AXIS Primary Policy is a written document that speaks for itself and Stewart denies that paragraph 19 is a complete and/or accurate characterization of the same.

<u>Axis Excess Policy</u>

20.    AXIS issued commercial excess liability policy AXXS01102903-14 to Tony Stewart Racing for policy period January 1, 2014 to January 1, 2015 ("AXIS Excess Policy"). The AXIS Excess Policy has limits of liability of $4,000,000 each occurrence and $4,000,000 general aggregate per covered event.

ANSWER:  Stewart admits that AXIS issued a commercial excess liability policy to Tony Stewart Racing ("AXIS Excess Policy").  Stewart further responds that the AXIS Excess Policy is a written document that speaks for itself and denies that paragraph 20 is a complete and/or accurate characterization of the same.

{3542408:}

- 7 -

21.    The AXIS Excess Policy provides Commercial Excess Liability Coverage that follows the AXIS Primary Policy in relevant part, as follows:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

ANSWER:  Stewart responds that the AXIS Excess Policy is a written document that speaks for itself and denies that paragraph 21 is a complete and/or accurate characterization of the same.

22.    The AXIS Excess Policy also contains other terms, conditions, and exclusions that define the scope of coverage under the AXIS Excess Policy.

ANSWER:  Stewart admits that the AXIS Excess Policy contains numerous terms, conditions, and exclusions that define the scope of coverage.  However, the AXIS Excess Policy is a written document that speaks for itself and Stewart denies that paragraph 22 is a complete and/or accurate characterization of the same.

<u>Axis Auto Policy</u>

23.    AXIS issued commercial auto policy number AXAL01101474-14 to Tony Stewart Racing for the policy period of January 1, 2014 to January 1, 2015, with a liability limit of $1,000,000 ("AXIS Auto Policy").

ANSWER:  Stewart admits that AXIS issued a commercial auto policy to Tony Stewart Racing ("AXIS Auto Policy").  Stewart further responds that the AXIS Auto Policy is a written document that speaks for itself and denies that paragraph 23 is a complete and/or accurate characterization of the same.

{3542408: }

- 8 -

24.     The AXIS Auto Policy contains the following exclusion:

B.      Exclusions

                                        ***

13. Racing
Covered "autos" while used in any professional or organized racing or
demolition contest or stunting activity, or while practicing for such contest
or activity. This insurance also does not apply while that covered "auto" is
being prepared for such a contest or activity.

ANSWER:  Stewart responds that the AXIS Auto Policy is a written document that speaks for itself and denies that paragraph 24 is a complete and/or accurate characterization of the same.

25.     The AXIS Auto Policy contains the following relevant definitions:

SECTION V – DEFINITIONS

B. "Auto" means:

1.  A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

ANSWER:  Stewart responds that the AXIS Auto Policy is a written document that speaks for itself and denies that paragraph 25 is a complete and/or accurate characterization of the same.

26.     The AXIS Auto Policy also contains other terms, conditions, and exclusions that define the scope of coverage under the AXIS Auto Policy.

ANSWER:  Stewart admits that the AXIS Auto Policy contains numerous terms, conditions, and exclusions that define the scope of coverage.  Stewart responds that the AXIS

Auto Policy is a written document that speaks for itself and denies that paragraph 26 is a complete and/or accurate characterization of the same.

<u>Axis's Coverage Position as to the Underlying Action</u>

27.     By letter dated September 18, 2015, AXIS disclaimed coverage to Stewart under the AXIS Primary Policy, the AXIS Excess Policy, and the AXIS Auto Policy for the Underlying Action.

<u>ANSWER</u>:  Stewart admits that AXIS sent a coverage letter dated September 18, 2015 (the "Coverage Letter").  Stewart further admits that the Coverage Letter asserted that AXIS had no obligation to provide coverage to Stewart under the AXIS Primary Policy, the AXIS Excess Policy, and/or the AXIS Auto Policy for the Underlying Action.  Stewart denies that the Coverage Letter accurately reflects or applies the implicated policy terms in the AXIS Primary Policy, the AXIS Excess Policy, and/or the AXIS Auto Policy.

28.     AXIS disclaimed coverage to Stewart under the AXIS Primary Policy and AXIS Excess Policy because the Schedule of Events endorsement and the exclusion within the Participant Legal Liability – Motorsports endorsement contained within the AXIS Primary Policy operate to preclude coverage.

<u>ANSWER</u>:  Stewart lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 28 and, therefore, denies the same.  Specifically, Stewart lacks knowledge or information regarding the reasons that AXIS denied coverage.  Stewart further responds that the Coverage Letter does not accurately reflect or apply the implicated policy terms in the AXIS Primary Policy, the AXIS Excess Policy, and/or the AXIS Auto Policy.

29.     Specifically, the Complaint in the Underlying Action alleged, and Stewart admitted, that the Incident took place during the ESS Event, which event did not qualify as one

{3542408: }

of the events listed on the Schedule of Events endorsement contained within the AXIS Primary Policy. Therefore, coverage to Stewart for the Underlying Action is unavailable under the AXIS Primary Policy.

ANSWER: Stewart admits that the facts giving rise to the Underlying Action occurred during an August 9, 2014, Empire Super Sprints event. Stewart denies the remaining allegations contained in paragraph 29.

30.    The Complaint in the Underlying Action also alleged that Ward, a racing vehicle driver, sustained injuries as a result of the Incident during the ESS Event with Stewart, another racing vehicle driver, which fell within the exclusion of the Participant Legal Liability – Motorsports endorsement. Therefore, coverage to Stewart is precluded for the Underlying Action based upon the application of the exclusion.

ANSWER: Stewart responds that the Complaint is a written document that speaks for itself and denies that paragraph 30 is a complete and/or accurate characterization of the same. Stewart denies the remaining allegations contained in paragraph 30.

31.    As the AXIS Excess Policy follows "the same provisions, exclusions and limitations that are contained" in the AXIS Primary Policy, AXIS disclaimed coverage to Stewart under the AXIS Excess Policy as well.

ANSWER: Stewart lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 31 and, therefore, denies the same. Specifically, Stewart lacks knowledge or information regarding the reasons that AXIS denied coverage. Stewart further responds that the Coverage Letter does not accurately reflect or apply the implicated policy terms in the AXIS Primary Policy, the AXIS Excess Policy, and/or the AXIS Auto Policy.

32.     AXIS also disclaimed coverage under the AXIS Auto Policy because the super sprint vehicle allegedly driven by Stewart during the ESS Event at the time of the Incident did not qualify as an "auto" under the AXIS Auto Policy, and because the AXIS Auto Policy contains a Racing Exclusion that precludes coverage for the Incident.

ANSWER:  Stewart lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 32 and, therefore, denies the same.  Specifically, Stewart lacks knowledge or information regarding the reasons that Axis denied coverage.  Stewart further responds the Coverage Letter does not accurately reflect or apply the implicated policy terms in the AXIS Primary Policy, the AXIS Excess Policy, and/or the AXIS Auto Policy.

First Cause of Action for Declaratory Relief

33.     AXIS repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "32" as if set forth more fully at length herein.

ANSWER:  Stewart incorporates by reference his responses to paragraphs 1 through 32 of the Complaint, and denies any other allegations he has not specifically admitted or denied.

34.     The AXIS Primary Policy contains a Schedule of Events endorsement that provides coverage only for "the event(s) listed in the above Schedule, and only for the specific date(s) or said event(s)."

ANSWER:  Stewart responds that that AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 34 is a complete and/or accurate characterization of the same.

35.     The Specified Events listed on the Schedule of Events endorsement are: (1) World of Outlaws - 65 Events; (2) USAC Sprint - 30 Events; and (3) USAC Silver Crown - 10 Events.

{3542408:}

ANSWER:  Stewart responds that the AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 35 is a complete and/or accurate characterization of the same.

36.    The Underlying Action alleges, and Stewart has admitted, that the Incident took place during the ESS Event, which is not an event contained within the Schedule of Events endorsement.

ANSWER:  Stewart admits that the facts giving rise to the Underlying Action occurred during an August 9, 2014, Empire Super Sprints event.  Stewart denies the remaining allegations contained in paragraph 36.

37.    The Underlying Action does not allege that the Incident took place during one of the Specified Events listed on the Schedule of Events endorsement contained within the AXIS Primary Policy.

ANSWER:  Stewart responds that the Complaint filed in the Underlying Action is a written document that speaks for itself and denies that paragraph 37 is a complete and/or accurate characterization of the same.

38.    The AXIS Primary Policy and AXIS Excess Policy do not provide coverage for any liability Stewart may have for events not listed on the Schedule of Events endorsement.

ANSWER:  Stewart responds that the AXIS Primary Policy and the AXIS Excess Policy speak for themselves and denies that paragraph 38 is a complete and/or accurate characterization of the same.  Stewart denies the remaining allegations contained in paragraph 38.

39.    The AXIS Primary Policy also includes an exclusion which precludes coverage for "claims or actions brought by one racing vehicle driver against another racing vehicle driver."

{3542408: }

- 13 -

ANSWER:  Stewart responds that the AXIS Primary Policy is a written document that speaks for itself and denies that paragraph 39 is a complete and/or accurate characterization of the same.

40.    The Underlying Action alleges that Ward, a racing vehicle driver, sustained injuries as a result of the Incident during the ESS Event with Stewart, another racing vehicle driver.

ANSWER:  Stewart responds that the Complaint filed in the Underlying Action is a written document that speaks for itself and denies that paragraph 40 is a complete and/or accurate characterization of the same.

41.    The AXIS Primary Policy and AXIS Excess Policy preclude coverage to Stewart based upon the application of the exclusion contained within the Participant Legal Liability – Motorsports endorsement.

ANSWER:   Stewart denies the allegations contained in paragraph 41.

42.    There is no coverage under the AXIS Excess Policy because it follows "the same provisions, exclusions and limitations that are contained" in the AXIS Primary Policy.

ANSWER:   Stewart denies the allegations contained in paragraph 42.

43.    The AXIS Auto Policy precludes coverage for Stewart with respect to the Underlying Action because the super sprint vehicle Stewart admitted that he was driving during the ESS Event does not qualify as an "auto" under the AXIS Auto Policy.

ANSWER:   Stewart denies the allegations contained in paragraph 43.

44.    The AXIS Auto Policy also contains a Racing Exclusion that precludes liability coverage for Stewart.

{3542408: }

ANSWER:  Stewart responds that the AXIS Auto Policy is a written document that speaks for itself and denies that paragraph 44 is a complete and/or accurate characterization of the same.  Stewart denies the remaining allegations contained in paragraph 44.

45.     Given the facts as pled in the Underlying Action, Stewart's admissions, and the actual facts concerning the Incident, there is no coverage pursuant to the terms, conditions, endorsements, and exclusions of the AXIS Primary Policy, AXIS Excess Policy, or AXIS Auto Policy.

ANSWER:  Stewart denies the allegations contained in paragraph 45.

46.     AXIS has no duty to defend or to indemnify Stewart with respect to the Underlying Action.

ANSWER:  Stewart denies the allegations contained in paragraph 46.

47.     An actual controversy exists between AXIS, on the one hand, and Stewart, on the other, with respect to the rights and obligations under the AXIS Primary Policy, AXIS Excess Policy, and AXIS Auto Policy.

ANSWER:  Stewart admits the allegations contained in paragraph 47.

48.     AXIS has no adequate remedy at law.

ANSWER:  Stewart denies the allegations contained in paragraph 48.

## II. AFFIRMATIVE DEFENSES

In defense of the allegations in the Plaintiff's Complaint, Stewart states as follows:

### *First Defense*

The relief sought by Plaintiff, or part thereof, is barred by the doctrines of estoppel and waiver.

### *Second Defense*

The relief sought by Plaintiff, or part thereof, is barred by the doctrine of laches.

### *Third Defense*

The relief sought by Plaintiff, or part thereof, is barred because of Plaintiff's breach of its duties of good faith and fair dealing.

### *Fourth Defense*

The relief sought by Plaintiff, or part thereof, is barred because of Plaintiff's material breach, repudiation, and/or anticipatory breach of the implicated agreements/policies.

### *Fifth Defense*

The relief sought by Plaintiff, or part thereof, is barred by the principle of unjust enrichment.

### *Other Defenses*

Stewart reserves the right to assert additional defenses, including further defenses identified through investigation and/or discovery.

WHEREFORE, Stewart requests that Plaintiff take nothing by way of its Complaint, that judgment be entered in favor of Stewart, and that Stewart be granted all other relief that the Court deems just and proper.

## III. COUNTERCLAIM

Defendant/Counterclaimant, Anthony W. Stewart, for his Counterclaim against Axis Insurance Company, alleges and states as follows:

{3542408: }

PARTIES AND BACKGROUND

*Parties*

1.      Defendant/Counterclaimant Anthony W. Stewart ("Stewart") is a citizen of the State of Indiana.

2.      Plaintiff/Counter-Defendant Axis Insurance Company ("AXIS") is, upon information and belief, a corporation organized under the laws of the State of Wisconsin with its principal place of business in Georgia.

*The Ward Action*

3.      On or about August 7, 2015, a lawsuit was filed against Stewart in the Supreme Court of the State of New York (County of Lewis) by Kevin A. Ward, Sr. and Pamela Ward (both Individually and as Administrators of the Estate of Kevin A. Ward, Jr.) (the "Ward Action").  A copy of the Complaint is attached hereto as *Exhibit A*.

4.      On or about August 21, 2015, the Ward Action was removed to the U. S. District Court for the Northern District of New York, where it remains pending as *Ward, et al. v. Stewart*, Case No. 7:15-cv-01023.

5.      The Ward Action alleges that Stewart negligently, recklessly, or intentionally caused the death of Kevin Ward, Jr.

*The Liability Policy*

6.      Effective January 1, 2014 to January 1, 2015, AXIS issued Policy No. AXGL01105050-14 to Tony Stewart Racing Enterprises (the "Liability Policy").  A copy of the Liability Policy is attached hereto as *Exhibit B*.

7.      The Liability Policy includes, among other things, a "Commercial General Liability Coverage Part" (the "CGL Coverage Part").

{3542408: }

8.     The Liability Policy provides primary-layer coverage of $1,000,000 per "occurrence" for claims covered under the CGL Coverage Part.

9.     The CGL Coverage Part, as amended by endorsement, provides coverage for, among other things, "Bodily Injury and Property Damage Liability" and "Participant Legal Liability – Motorsports."

10.     Under the "Bodily Injury and Property Damage Liability" coverage AXIS agrees to pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage."

11.     Under the "Participant Legal Liability – Motorsports" coverage, AXIS agrees to pay those sums that the insured becomes legally obligated to pay as "participant legal liability."

12.     The CGL Coverage Part also provides AXIS with the right and duty to defend any lawsuit asserting covered liabilities.

13.     Stewart is an "insured" as that term is used in the CGL Coverage Part.

14.     The Ward Action asserts claims for "bodily injury," "property damage," and/or "participant legal liability" as those terms are used in the CGL Coverage Part.

15.     The Ward Action asserts claims for liability that are within the scope of coverage provided by the CGL Coverage Part.

16.     The CGL Coverage Part is applicable to the Ward Action, and no terms or exclusions contained therein unambiguously exclude coverage.

*The Excess Policy*

17.     Effective January 1, 2014 to January 1, 2015, AXIS issued Policy No. AXXS01102903-14 to Tony Stewart Racing Enterprises (the "Excess Policy"). A copy of the Excess Policy is attached hereto as *Exhibit C*.

{3542408: }

18.    The Excess Policy includes, among other things, a "Commercial Excess Liability Coverage Form" (the "GL Excess Form").

19.    The Excess Policy provides excess-layer coverage of $4,000,000 per "occurrence" for claims covered under the GL Excess Form.

20.    The GL Excess Form provides excess coverage for, among other things, "Bodily Injury and Property Damage Liability" and "Participant Legal Liability – Motorsports" that is covered under the CGL Coverage Part.

21.    As noted above, the Ward Action asserts claims for liability that are within the scope of coverage provided by the CGL Coverage Part and no terms or exclusions contained therein unambiguously exclude coverage.

22.    The Ward Action asserts damages in excess of the "per occurrence" limits provided by the CGL Coverage Part.

23.    As such, to the extent that the "per occurrence" limits provided by the CGL Coverage Part are exhausted, the GL Excess Form is applicable to the Ward Action.

### *AXIS's Wrongful Denial of the Claim*

24.    Shortly after receiving the Ward Action, Stewart provided AXIS with notice of the Ward Action and requested coverage under the Liability Policy and the Excess Policy.

25.    By letter dated September 18, 2015, AXIS disclaimed any duties to provide coverage, whether defense or indemnity, for the Ward Action.

26.    In wrongfully denying coverage, AXIS misrepresented the policy provisions, relevant facts, and applicable law.

{3542408: }

## COUNT I – BREACH OF CONTRACT / LIABILITY POLICY

27.     Stewart adopts and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 26 above.

28.     The Ward Action is within the scope of coverage provided by the Liability Policy.

29.     All conditions precedent to coverage under the Liability Policy have been satisfied or waived and no policy exclusion precludes coverage for the Ward Action under the CGL Coverage Part.

30.     Moreover, AXIS has waived its coverage defenses and is otherwise estopped from denying coverage under the Liability Policy.

31.     Thus, under the Liability Policy, AXIS is obligated to defend and indemnify Stewart in connection with the Ward Action.

32.     Nonetheless, AXIS has denied any such obligation.

33.     By doing so, AXIS has repudiated the policy and is in breach of its contractual obligations to Stewart.

34.     As a result of AXIS's breach of its contractual obligations, Stewart has been (and continues to be) damaged and is entitled to direct, consequential, and incidental damages.

## COUNT II – BREACH OF CONTRACT / EXCESS POLICY

35.     Stewart adopts and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 34 above.

36.     The Ward Action is within the scope of coverage provided by the Excess Policy.

37.     All conditions precedent to coverage under the Excess Policy have been satisfied or waived and no policy exclusion precludes coverage for the Ward Action under the GL Excess Form.

{3542408: }

38.     Moreover, AXIS has waived its coverage defenses and is otherwise estopped from denying coverage under the Excess Policy.

39.     Thus, under the Excess Policy, AXIS is obligated to defend and indemnify Stewart in connection with the Ward Action when and if the limits of the Liability Policy are exhausted.

40.     Nonetheless, AXIS has denied any such obligation.

41.     By doing so, AXIS has repudiated the policy and is in breach of its contractual obligations to Stewart.

42.     As a result of AXIS's breach of its contractual obligations, Stewart has been (and continues to be) damaged and is entitled to direct, consequential, and incidental damages.

## COUNT III – BAD FAITH

43.     Stewart adopts and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 42 above.

44.     Through its claims handling and wrongful denial, AXIS has misrepresented policy provisions, relevant facts, and applicable law and, thus, has breached its duties of good faith and fair dealing.

45.     AXIS has acted with ill will and/or in bad faith and without justification.

46.     As a result of AXIS's conduct, Stewart has incurred direct, consequential, and incidental damages.

47.     As a result of AXIS's breach of its duties of good faith and fair dealing, Stewart has been (and continues to be) damaged and is entitled to both compensatory and punitive damages.

<u>COUNT IV – REQUEST FOR DECLARATORY RELIEF</u>

48.     Stewart adopts and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 47 above.

49.     The allegations set forth above describe an actual, justiciable controversy between AXIS and Stewart regarding their rights and obligations.

50.     The Liability Policy is applicable to the Ward Action, and no terms or exclusions in the policy unambiguously exclude coverage.

51.     The Excess Policy is applicable to the Ward Action, and no terms or exclusions in the policy unambiguously exclude coverage.

52.     As such, Stewart is entitled to a declaratory judgment that:  AXIS is obligated to provide Stewart with a complete defense for the Ward Action; and AXIS is obligated to fully indemnify Stewart for the Ward Action up to the combined per occurrence limits of the Liability Policy and the Excess Policy.

WHEREFORE, Stewart, by counsel, prays for: (a) a declaratory judgment that AXIS is obligated to provide coverage to him, including both defense and indemnity, in connection with the Ward Action; (b) immediate payment for all past fees and costs incurred in the underlying litigation and payment for the same on an as-incurred basis going forward; (c) a judgment in his favor and against AXIS in an amount that will fully compensate him for his damages and losses, including consequential and incidental damages and prejudgment interest; (d) an award of punitive damages; (e) an award of costs, attorney fees, and litigation expenses in this action, with interest; and (f) all other just and proper relief.

{3542408: }

DATED: Buffalo, New York
December 1, 2015

Respectfully submitted,

/s/ Brian D. Gwitt
Brian D. Gwitt
WOODS OVIATT GILMAN LLP
350 W. Main Street
Suite 1900
Buffalo, NY 14202
(716) 248-3213

Richard M. Smikle *(Pro hac vice motion to be filed)*
Angela P. Krahulik *(Pro hac vice motion to be filed)*
Nicholas B. Reuhs *(Pro hac vice motion to be filed)*
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100
Attorneys for Defendant
Anthony Wayne Stewart

## **REQUEST FOR JURY TRIAL**

Defendant, Anthony Wayne Stewart, respectfully requests that all issues herein properly

triable by jury be so tried.

/s/ Brian D. Gwitt
Brian D. Gwitt